UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| EUGENE PATTERSON,<br><br>    Plaintiff,<br><br>v.<br><br>ALLY FINANCIAL INC.,<br><br>    Defendant. | Case No. 3:16-cv-01592-TJC-JBT |

**DEFENDANT ALLY FINANCIAL, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Defendant Ally Financial Inc. ("Ally"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves the Court for an order granting partial summary judgment in its favor on the grounds that there is no genuine dispute as to any material fact and Ally is entitled to judgment as a matter of law on Plaintiff Eugene Patterson's claim for violation of the Telephone Consumer Protection Act. In support of this motion, Ally submits the following memorandum of law, together with the concurrently filed declarations of Diane Accurso and Artin Betpera.

**INTRODUCTION**

Defendant Ally Financial, Inc. ("Ally") respectfully submits these suggestions in support of its motion for partial summary judgment. The Court should dismiss Plaintiff Eugene Patterson's ("Patterson") first cause of action, which purports to state a claim against Ally for violations of the Telephone Consumer Protection Act ("TCPA").

Patterson's TCPA claim is meritless because Patterson unequivocally provided prior express consent to each of the alleged phone calls at issue in this case. Patterson's prior express

consent is set forth in the written contractual agreement that he signed in order to obtain financing from Ally. In that contract, Paterson (1) provided the cellular phone number at issue; (2) specifically agreed to receive autodialed calls at that number, and (3) agreed that the contract terms, including his prior express consent to autodialed calls, could not be changed except through a written contract modification signed by Ally. Patterson's prior express consent is an absolute defense to his TCPA claim. *See* 47 U.S.C. § 227(b)(1)(A).

In his First Amended Complaint, Patterson attempts to overcome this prior express consent defense by alleging that, over a year after signing the above-referenced contract, he revoked his prior express consent. *See* First Amended Complaint ¶¶ 24-25. In particular, Patterson alleges that, on several occasions, when speaking by phone with Ally employees, he asked Ally to stop contacting him at the cellular phone number at issue. *Id*. Patterson claims that, as a result, "[e]ach subsequent call [Ally] made to [Patterson's] aforementioned cellular telephone number was done so without [his] 'express consent.'" *Id*. ¶ 25.

Patterson's revocation argument fails because his prior express consent was a specific term of his contract with Ally. A party cannot unilaterally change or revoke a specific term of a binding contract. Thus, Patterson was not legally entitled to unilaterally revoke his prior express consent. As a result, under the TCPA, Patterson's purported oral revocations of that consent had no legal effect. Because Patterson's revocation argument – the sole basis of his TCPA claim – lacks legal merit, the Court should dismiss Patterson's TCPA claim.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. Plaintiff has an auto finance account at Ally (the "Auto Finance Account"). *See* Plaintiff's Response to Request for Admission No. 1, attached to the Declaration of Artin Betpera ("Betpera Dec.") as Exhibit A; Declaration of Diane Accurso in Support of Motion for Summary Judgment ("Accurso Dec."), ¶ 3.

2. The Auto Finance Account stems from an automobile-purchase transaction that took place on or about November 2, 2013 (the "Transaction"). Accurso Dec., ¶ 4.

3. In the Transaction, Ally financed Patterson's acquisition of a new Chevrolet Silverado from FX Caprara Chevrolet Buick ("FX Caprara"). *Ibid*.

4. FX Caprara is an automobile dealer located in the Village of Pulaski, State of New York. *Ibid*.

5. On or about November 2, 2013, to obtain the necessary financing from Ally, Patterson signed a credit application. *Id*. at ¶ 5 Ex. B (hereinafter, the "Credit Application").

6. On or about November 2, 2013, to obtain the necessary financing from Ally, Patterson also signed a Retail Installment Contract (the "RIC"). *Id*. at ¶ 4, Ex. A (hereinafter, the "RIC").

7. In the Credit Application, in the section entitled Applicant Information, Patterson provided the following phone number: 315-486-1020 (the "Cell Number"). *Id*. at Ex. B.

8. The Cell Number is the phone number associated with Patterson's personal cellular phone. *See* First Amended Complaint ¶ 16.

9. Patterson is the sole owner and user of the Cell Number and associated cellular phone. *See* Plaintiff's Response to Interrogatory No. 9, attached to the Betpera Dec. as Exhibit B.

10. In the Credit Application, Patterson represented that the Cell Number belonged to him. Plaintiff's Response to Interrogatory No. 8, attached to the Betpera Dec., as Exhibit B.

11. In the Credit Application, Patterson consented to be contacted at the Cell Number by Ally. *See* Plaintiff's Response to Request for Admission No. 4, attached to the Betpera Dec. as Exhibit A.

12. In the Credit Application, Patterson stated, among other things: "I hereby consent to receive autodialed and/or pre-recorded telemarketing calls from or on behalf of dealer (or any

financing source to which dealer assigns my contract) at the telephone number provided in this credit application, including any cell phone numbers. I understand that this consent is not a condition of purchase or credit." *See* Credit Application at 1.

13. The RIC contains a section entitled "HOW THIS CONTRACT CAN BE CHANGED," which states as follows: "This contract contains the entire contract between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding." *See* RIC at 2 (emphasis in original).

14. The RIC contains a section entitled "Applicable Law," which states as follows: "Federal law and the law of the state of our address shown on the front of this contract apply to this contract." *See* RIC at 2.

15. The address shown on the front of the RIC is the address of FX Caprara in the Village of Pulaski, State of New York. *See* RIC at 1.

16. Thus, the RIC is governed by New York law. *See* RIC at 1.

17. Ally has not signed any written amendments to the Credit Application. Accurso Dec., ¶ 8.

18. Ally has not signed any written amendments to the RIC. Accurso Dec., ¶ 8.

19. Starting in April 2014, Patterson became delinquent in his payments on the Auto Finance Account. Accurso Dec., ¶ 9; Plaintiff's Response to Request for Admission No. 2, attached as Exhibit A to the Betpera Dec.

20. Patterson's TCPA claim concerns alleged calls made by Ally to the Cell Number beginning in February 2015. *See* First Amended Complaint ¶¶ 24-26.

21. The purpose of the Calls was to contact Patterson regarding his delinquency on the Auto Finance Account (the "Calls"). *See* First Amended Complaint ¶¶ 24-26; Accurso Dec., ¶ 9.

**ARGUMENT**

**I. Overview**

The Court should grant summary judgment in favor of Ally on Patterson's TCPA claim. Patterson alleges that the Calls were made "using an automatic dialing system or prerecorded or artificial voice." *See* First Amended Complaint ¶ 51. But even assuming *arguendo* that, as alleged by Patterson, the Calls were made using an automatic dialing system or prerecorded or artificial voice, the fact remains that Patterson's TCPA claim is not viable.

Patterson's TCPA claim fails because the Calls were made with Patterson's prior express consent. There is no genuine dispute about the fact that, in the Credit Application and RIC, Patterson consented to be contacted at the Cell Number. The Calls are alleged to have taken place after that consent was given. *See* First Amended Complaint ¶¶ 24-26. Patterson alleges that, after executing the Credit Application and RIC, but before the Calls began, he revoked that consent during an oral conversation with an Ally employee. *See* First Amended Complaint ¶ 24. However, as a matter of law, because Patterson's consent was a specific provision of his binding contract with Ally, he was not legally entitled to unilaterally revoke it.

Therefore, Patterson's consent remained in effect at all times relevant to this case. It was appropriate for Ally to rely on that consent when contacting Patterson regarding his delinquent Auto Finance Account. Patterson's prior express consent moots Patterson's TCPA claim. The Court therefore should grant Ally's instant motion for summary judgment.

**II. Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). The movant

bears the initial burden of persuasion. *See Lucy v. Georgia-Pacific Corrugated I, LLC*, 497 Fed. Appx. 870, 871 (11th Cir. 2012). However, once the movant meets that burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonably jury could find in its favor." *Id*. (quoting *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007). In other words, the nonmoving party must identify a genuine, relevant factual dispute that has "a real basis in the record." *See Collins v. Ensley*, 498 Fe. Appx. 908, 909 (11th Cir. 2012) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

Therefore, once the movant meets the initial burden of persuasion, "mere conclusions and unsupported factual allegations are insufficient to defeat a motion for summary judgment." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). In addition, "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)).

The evidence presented by Ally in support of the instant motion for summary judgment is more than sufficient to meet Ally's initial burden of persuasion. Ally's evidence demonstrates that the Calls were made were Patterson's prior express consent. Ally's evidence also shows that Patterson's prior express consent was a specific term of a binding contract. Thus, Patterson was not entitled to unilaterally revoke that consent. Consequently, his consent remained in effect at all relevant times, notwithstanding Patterson's allegation that he orally revoked it. Patterson's prior express consent to the Calls entirely eliminates Patterson's TCPA claim. There is no genuine factual dispute that Patterson can raise in opposition to the instant motion. Therefore, the Court should grant the motion, as discussed in greater detail below.

## II. Patterson Consented to Be Called at the Cell Number

### A. Legal Framework

Under some circumstances, the TCPA prohibits the use of an automatic dialing system or an artificial or prerecorded voice in making a phone call. *See* 47 U.S.C. § 227(b)(1)(A). But this prohibition is subject to an important exception. *Id.* Specifically, such calls are not prohibited if they are "made with the prior express consent of the called party." *See id.*

Therefore, in a TCPA case, when the defendant demonstrates that the alleged calls at issue were made with the plaintiff's prior express consent, the district court should dismiss the case. *See*, *e.g.*, *Murphy v. DCI Viologicals Orlando*, 797 F.3d 1302, 1308 (11th Cir. 2015) (affirming dismissal of TCPA claim in light of "facts that demonstrate prior express consent"); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1113 (11th Cir. 2014) (entering summary judgment in favor of defendant in TCPA case in light of "the TCPA exception for prior express consent"); *Vanover v. NCO Fin. Sys.*, No. 8:14-cv-964, 2015 U.S. Dist. LEXIS 186230, at *8 (M.D.Fla. Nov. 17, 2015) (entering summary judgment in favor of defendant in TCPA case in light of indisputable evidence that plaintiff had consented to be called).

Under the TCPA, when a customer provides a phone number to a business, the customer thereby provides prior express consent to be contacted at that phone number by that business. *See* Federal Communications Commission (FCC) Report and Order, Oct. 16, 1992, Release No. 92-443 ("Further, telephone subscribers who knowingly release their phone numbers to a business will be deemed to have given their invitation or consent to be called at the number which they have given, absent instructions to the contrary."); FCC Declaratory Ruling, Dec. 28, 2007, Release No. 07-232 ("autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible

as calls made with the 'prior express consent' of the called party."). *See also Mais*, 768 F.3d at 1126 (providing cellular phone number on hospital admissions form constituted prior express consent to be contacted at that number in connection with medical bills).

Prior express consent does not turn on a customer's subjective intent. *See Lawrence v. Bayview Loan Servicing, LLC*, 666 Fed. Appx. 875 (11th Cir. 2016). In *Lawrence*, the plaintiff, Robert Lawrence ("Lawrence"), had provided his cell phone number during communications with Bayview Loan Servicing, LLC ("Bayview"). *Id*. at 877. As a matter of law, by providing his cell phone number during these communications, Lawrence consented to be contacted at that phone number, even if that was not his subjective intent. *Id*. at 880. As the Court explained: "[W]ords or conduct . . . reasonably understood by another to be intended as consent . . . [are] as effective as consent in fact." *Id*. at 880 (quoting Restatement (Second) of Torts § 879 (1979)). Consequently, "even if Lawrence did not intend to consent in fact to calls placed by an ATDS system, he nevertheless provided apparent consent by repeatedly providing his cell phone number to Bayview without qualification." *Id*. In other words, "the provision of a cell phone number during an ordinary business communication is essentially a request for contact at the provided number." *Id*. at 880 (citing H.R. Rep. No. 102-317 at 13).

Customers can provide prior express consent directly or indirectly. *Mais*, 768 F.3d at 1123. In *Mais*, the plaintiff, Mark Mais ("Mais"), received treatment at a hospital emergency room. *Id*. at 1113. Mais' wife, on his behalf, provided his cell phone number on the hospital admissions form. *Id*. During his hospital stay, Mais received radiology services from Florida United Radiology ("Florida United"), an entity separate from the hospital. *Id*. at 1114. Florida United's collection agent later retrieved Mais' cell phone number from the admissions form and contacted Mais at that phone number regarding payment of bills. *Id*. Mais argued that the

admissions form was not a direct communication with Florida United and thus was not a consent to be contacted by that entity. *Id*. at 1222-3. The Court of Appeals rejected Mais' argument. As the Court held: "[W]e see no sign that the FCC thought a cell phone number could be 'provided to the creditor' only through direct delivery." *Id*. at 1223. The Court concluded: "Plainly, Mais's wife made his number available to Florida United by granting the Hospital permission to disclose it in connection with billing and payment." *Id*.

### B. Patterson Indisputably Consented to the Calls

Patterson indisputably provided prior express consent to each of the Calls. Under the TCPA, the mere fact that Patterson included the Cell Number in the Credit Application (*see* Credit Application at 1) would be enough to establish prior express consent. *See*, *e.g.*, *Mais*, 768 F.3d at 1126. *See also* FCC Declaratory Ruling, Dec. 28, 2007, Release No. 07-232 ("We conclude that the provision of a cell phone number to a creditor, *e.g., as part of a credit application*, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.") (emphasis added)*;* FCC Report and Order, Feb. 15, 2012, Release No. 12-21 (noting that, in the preceding 2008 Declaratory Ruling, the FCC "concluded that the provision of a cell phone number to a creditor, *e.g., as part of a credit application*, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.") (emphasis added).

However, in the Credit Application, Patterson went beyond merely providing the Cell Number. In the Credit Application, Patterson also specifically consented "to receive autodialed and/or pre-recorded telemarketing calls from or on behalf of dealer (or any financing source to which dealer assigns my contract) at the telephone number provided in this credit application, including any cell phone numbers." *See* Credit Application at 1.

Patterson executed the Credit Application before any of the Calls were made. Thus, the Credit Application constitutes prior express consent to all of the Calls.

### III. Patterson Was Not Entitled to Unilaterally Revoke His Consent

#### A. Overview

Patterson's TCPA claim hinges wholly on his allegation that, in a series of phone calls with Ally beginning in February 2015, he unilaterally revoked his consent to be called at the Cell Number. *See* First Amended Complaint ¶¶ 24-25. Based solely on that allegation, Patterson claims that "[e]ach subsequent call [Ally] made to [Patterson's] aforementioned cellular telephone number was done so without [his] 'express consent.'" *Id*. ¶ 25.

Patterson's revocation argument is unavailing because it overlooks the significance of the fact that his consent was a specific term of a binding contract with Ally. Under the TCPA, the terms of a binding contract may restrict a customer's ability to revoke consent. *See*, *e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014) (noting that, under the TCPA, a customer is only free to revoke consent "*in the absence of any contractual restriction to the contrary.*") (emphasis added). Patterson could not unilaterally revoke his contractual consent any more than he could revoke any other contract term, such as the interest rate of the loan or his deadline to repay the loan principal. *Id*. Therefore, Patterson's alleged unilateral revocation of that consent was legally ineffective. *Id*. Because Patterson could not and did not validly revoke his consent to be called at the Cell Number, his TCPA claim fails. *Id*.

#### B. The Significance of Contractual Consent

##### 1. Summary

The Eleventh Circuit Court of Appeals has twice noted that, under the TCPA, the terms of a contract may restrict a customer's ability to revoke consent. *See Osorio*, 746 F.3d at 1255

(11th Cir. 2014); *Schweitzer v. Comenity Bank*, No. 16-cv-10398, 2017 U.S. App. LEXIS 13769 (11th Cir. Aug. 10, 2017). A recent Middle District of Florida decision also has recognized this point. *See Target Nat'l Bank v. Welch*, No. 8:15-cv-614, 2016 U.S. Dist. LEXIS 38635 (M.D.Fla. Mar. 24, 2016). The Second Circuit Court of Appeals recently elaborated in detail on this point in *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51 (2d Cir. 2017).

Each of these legal precedents is discussed below.

### 2. **The Eleventh Circuit's *Osorio* Decision**

In *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014), Clara Bentacourt ("Bentacourt") provided a phone number to an agent for State Farm Bank, F.S.B. ("State Farm") in applying for an insurance policy. *Osorio*, 746 F.3d at 1247. While taking Bentacourt's insurance application, the State Farm agent offered to put the insurance payments on a State Farm credit card. *Id*. Bentacourt agreed. *Id*. Allegedly, the State Farm agent also added the same phone number to Bentacourt's credit card application. *Id*.

Bentacourt subsequently fell behind on her credit card payments. *Osorio*, 746 F.3d at 1248. State Farm then authorized a collection agency to collect the debt, and the collection agency began contacting Bentacourt at the phone number she had provided to the State Farm agent. *Id*. At some point, Bentacourt allegedly told the collection agency to stop contacting her at that number. *Id*. The agent allegedly did not honor that request. *Id*.

On appeal, the Eleventh Circuit considered, among other issues, the question of whether Bentacourt's alleged oral revocation of her prior consent was legally effective. *Osorio*, 746 F.3d at 1254-56. The Court noted that the TCPA does not expressly define whether or how a customer may revoke consent. *Id*. at 1255. Therefore, the Court held that Congress intended for the TCPA to incorporate "[c]ommon-law notions of consent." *Id*.

The Court explained that common-law notions of consent "*generally* allow oral revocation." *Osorio*, 746 F.3d at 1255 (emphasis added). But the Court also noted that this general rule operates only "*in the absence of any contractual restriction to the contrary.*" *Id*. (emphasis added). Because no such contractual restrictions existed in Bentacourt's case, she was "free to orally revoke any consent previously given to State Farm." *Id*.

### 3. The Eleventh Circuit's *Schweitzer* Decision

*Schweitzer*, like *Osorio*, stemmed from a consumer's application for a credit card. *Schweitzer*, 2017 U.S. App. LEXIS 14769, at \*2. In *Schweitzer*, the parties stipulated that Emily Schweitzer ("Schweitzer") provided her cellular number to Comenity Bank ("Comenity") in connection with her credit card application, and that, by doing so, she consented to be contacted at that cellular number. *Id*. at \*2. *See also Schweitzer v. Comenity Bank*, U.S. District Court, Southern District of Florida, No. 9:15-cv-80665, Order on Cross-Motions for Summary Judgment (Dkt. No. 82) (the "Schweitzer District Court Order") at 5. Subsequently, Schweitzer orally requested that Comenity refrain from contacting her in the mornings and during working hours. *Comenity*, 2017 U.S. App. LEXIS 14769, at \*3. Schweitzer alleged that Comenity failed to honor that request and that it thereby violated the TCPA. *Id*.

In the course of analyzing Schweitzer's TCPA claim, the Eleventh Circuit reaffirmed three of the key points that it had previously noted in *Osorio*: (1) that "Congress intended for the TCPA to incorporate the common-law understanding of consent" (*Schweitzer*, 2017 U.S. App. LEXIS 14769, at \*6); (2) that the common-law understanding of consent "*generally* allows for oral revocation" (*id*.) (emphasis added), and (3) that this general rule can be overridden by "*a contractual restriction to the contrary*." *Id*. at \*2 (emphasis added).

12

In Schweitzer's case, no such contractual restriction existed. Therefore, in *Schwietzer*, the key question to be decided was whether, in the absence of such a contractual restriction, the TCPA permits a party to partially revoke consent by specifying certain days or times at which he or she should not be contacted at a particular phone number. *Schweitzer*, 2017 U.S. App. LEXIS 14769, at *2. *See also* Schweitzer District Court Order at 5. The Court answered this question in the affirmative. *Schwietzer*, 2017 U.S. App. LEXIS 14769, at **6-10.

### 4. **This Court's *Welch* Decision**

*Welch*, like *Osorio* and *Schweitzer*, involved a credit card application. *Welch*, 2016 U.S. Dist. LEXIS 38635, at **2-3. In applying for a credit card from Target National Bank ("Target"), Donna C. Ward ("Ward") provided Target with a cellular phone number. *Id*. Ward alleged that, subsequently, she unilaterally revoked that consent during a phone call with a Target collection agent. *Id*. at *3. Allegedly, Target and his collection agent continued to call Ward on that cellular phone number against her wishes. *Id*. Ward brought a TCPA claim, and the key question was whether her oral revocation was legally valid. *Id*.

In analyzing this issue, this Court noted three of the key points previously discussed by the Eleventh Circuit Court of Appeals in *Osorio*: (1) that "Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation" (*Welch*, 2016 U.S. Dist. LEXIS 38635, at *13 (quoting *Osorio*, 746 F.3d at 1255)); (2) that, under the common law, consent "*generally*" may be orally revoked (*Welch*, 2016 U.S. Dist. LEXIS 38635, at *13 (emphasis added) (quoting *Osorio*, 746 F.3d at 1255)), and (3) that this general rule may be superseded by "*any contractual restriction to the contrary*" (*Welch*, 2016 U.S. Dist. LEXIS 38635, at *14 (emphasis in original) (quoting *Osorio*, 746 F.3d at 1255)).

Target conceded that the credit card agreement did not contain any language restricting Ward's ability to subsequently revoke consent. *Welch*, 2016 U.S. Dist. LEXIS 38635, at *14. Target also conceded that, even if the credit card agreement *had* contained such a restriction, it would have been Target's policy and practice to honor any subsequent request by the customer to stop phone calls. *Id*. at *12 n. 3. In light of these concessions, this Court concluded that Ward was entitled to orally invoke her prior express consent. *Id*. at **14-15.

### 5. The Second Circuit's *Reyes* Decision

In *Reyes*, the plaintiff, Alberto Reyes, Jr. ("Reyes"), had entered into a lease agreement with Lincoln Automotive Financial Services ("Lincoln"). *Reyes*, 861 F.3d at 53. In the lease agreement, Reyes provided his cellular phone number and specifically consented to be contacted by Lincoln at that number. *Id*. at 53-54. The lease agreement stated as follows:

> "You [Reyes] also expressly consent and agree to Lessor [Ford], Finance Company, Holder and their affiliates, agents and service providers may use written, electronic or verbal means to contact you. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems. You agree that Lessor, Finance Company, Holder and their affiliates, agents and service providers may use any email address or any telephone number you provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether you incur charges as a result.

*Id*. Reyes claimed that, after the execution of the lease agreement, he revoked his consent, but that Lincoln nonetheless continued calling him against his wishes. *Id*. at 54-55.

The Second Circuit Court of Appeals held that Reyes' claim was not viable because, under the TCPA, "a party is not able to revoke consent that is a term in a prior contract." *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 55 (2d Cir. 2017). The Second Circuit's reasoning was similar to the reasoning of the Eleventh Circuit in *Osorio* and *Schweitzer*. The Second Circuit began by noting that, under the TCPA, the rules for revocation of consent must be drawn from

the common law.  *Reyes*, 861 F.3d at 57.  Under the common law, when consent "is not given in exchange for any consideration," and "is not incorporated into a binding legal agreement," parties may revoke consent.  *Id*.  But when a party "agrees to be contacted as part of a bargained-for exchange," the party may not "unilaterally revoke that consent."  *Id*. at 56.

The Second Circuit observed that the facts of *Osorio* involved the first type of consent, *i.e.*, non-contractual consent.  *Id*. at 56.  When, as in *Osorio*, a party "has freely and unilaterally given his or her informed consent to be contracted," that party "can later revoke that consent." *Id*.  By contrast, *Reyes* involved contractual consent because the lease agreement at issue in *Reyes* included a specific consent provision.  *Id*. at 53-54.  Therefore, Reyes was not entitled to unilaterally revoke his consent, and his TCPA claim was not viable.  *Id*. at 59.

As a result, the Second Circuit affirmed the District Court's decision granting complete summary judgment in favor of Lincoln with respect to Reyes' TCPA claim.

### C. Patterson Contractually Consented to the Calls

To paraphrase *Reyes*, Patterson indisputably agreed to be "contacted as part of a bargained-for exchange."  *Reyes*, 861 F.3d at 56.  Similarly, to paraphrase *Osorio*, *Schweitzer* and *Welch*, Patterson plainly agreed to a "contractual restriction" of his ability to subsequently unilaterally his consent to be contacted.  *Osorio*, 746 F.3d at 1255; *Schweitzer*, 2017 U.S. App. LEXIS 14769, at *2; *Welch*, 2016 U.S. Dist. LEXIS 38635, at *14.

Patterson executed two contractual instruments in order to obtain financing from Ally: the Credit Application and the RIC.  Because both of these contractual instruments were integral to the Transaction, they should be interpreted together as a single agreement.  *See*, *e.g.*, *Clayton v. Howard Johnson Franchise Sys., Inc.*, 954 F.2d 645 (11th Cir. 1992) ("Under Florida law, where two or more documents are executed by the same parties, at or near the same time and

15

concerning the same transaction or subject matter, the documents are generally construed together as a single contract."). *See also Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993) ("Generally, separate writings are construed as one agreement if they relate to the same subject matter and are executed simultaneously.")

Patterson's contract with Ally contains an even broader and more absolute consent provision than the *Reyes* contract. Both the Patterson contract and the *Reyes* contract are governed by New York law. In the Credit Application at issue here, Patterson provided the Cell Number and represented as follows: "I hereby consent to receive autodialed and/or pre-recorded telemarketing calls from or on behalf of dealer (or any financing source to which dealer assigns my contract) at the telephone number provided in this credit application, including any cell phone numbers. I understand that this consent is not a condition of purchase or credit." *See* Credit Application at 1. This provision is similar to the provision at issue in *Reyes*, which the Second Circuit found was sufficient to establish contractual consent.

However, the contract at issue here also includes an additional provision that was not present in *Reyes*. In particular, unlike the contract at issue in *Reyes*, Patterson's contract at Ally prohibits subsequent oral amendments. *See* RIC at 2. The RIC specifically states that any modification of the contract must be in writing and signed by Ally. *Id*. Therefore, even more so than in *Reyes*, it is clear that the contract at issue here was meant by the parties to completely eliminate Patterson's future ability to unilaterally revoke his consent.

The facts of this case are distinguishable from the facts of *Osorio*, *Schweitzer* and *Welch*. *Osorio*, *Schweitzer* and *Welch* did not involve binding consent provisions built into a contract. This case does, as described above. Ally's dealings with Patterson with respect to his delinquent Auto Finance Account were consistent with the terms of that contract.

## IV. Ally Indisputably Did Not Waive Patterson's Consent

Under the RIC, Patterson's consent to be contacted at the Cell Number was irrevocable, in the absence of a written contract modification executed by Ally. *See* RIC at 2. It is undisputed that no such modification took place. See Accurso Dec., ¶ 8. Therefore, Patterson's consent to be contacted at the Cell Number remained in effect at all times relevant to this case.

## V. Patterson's Prior Express Consent Eliminates His TCPA Claim

It is undisputed that all of the Calls at issue in this case allegedly occurred subsequent to Patterson's execution of the Credit Agreement and RIC, in which Patterson provided express consent to be called at the Cell Number. *See* First Amended Complaint ¶¶ 24-26. Therefore, Patterson's prior express consent eliminates Patterson's TCPA claim in its entirety. *See*, *e.g.*, *Murphy*, 797 F.3d at 1308 (dismissing TCPA claim because each alleged phone at issue took place after the provision of prior express consent by the customer); *Mais*, 768 F.3d at 1113 (same); *Vanover*, 2015 U.S. Dist. LEXIS 186230, at *8 (same).

## CONCLUSION

For the reasons set forth above, Ally respectfully requests that the Court grant the instant motion for partial summary judgment and dismiss Patterson's TCPA claim in its entirety, along with such other and further relief as the Court deems just and proper.

Dated this 8th day of September, 2017.

*/s/ Artin Betpera*
Artin Betpera
Florida Bar No. 0049535
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
Telephone: (714) 800-1421
Facsimile: (714) 800-1499
betpera.artin@dorsey.com

Attorneys for Defendant
ALLY FINANCIAL INC.

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed a copy of the within and foregoing DEFENDANT ALLY FINANCIAL INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which automatically sent e-mail notification of such filing to the following attorneys of record, each of whom is a registered participant in the Court's electronic notice and filing system:

>Shaughn C. Hill, Esquire (FBN 105998)
>MORGAN & MORGAN, Tampa, P.A.
>One Tampa City Center
>201 North Franklin Street, 7th Floor
>Tampa, Florida 33602
>Email: Shill@forthepeople.com
>
>*Attorneys for Plaintiff*
>*Eugene Patterson*

This 8th day of September, 2017.

>*/s/ Artin Betpera*
>Artin Betpera