UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| EUGENE PATTERSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALLY FINANCIAL, INC., )<br>)<br>Defendant. )<br>) | Case No. 3:16-cv-01592-TJC-JBT |

**DEFENDANT'S REPLY SUGGESTIONS IN FURTHER SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

Defendant Ally Financial, Inc. ("Ally") respectfully submits these reply suggestions in further support of its motion for partial summary judgment (Dkt. No. 19) ("Motion").

## ARGUMENT

**I.     Patterson Mischaracterizes *Osorio***

In *Osorio*, the Eleventh Circuit held that, under the TCPA, consumers may revoke prior express consent "in the absence of any contractual restriction to the contrary." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014). *See also* Motion at 10-12. Because such a contractual restriction exists here, Patterson cannot revoke his prior express consent. *Id*. at 15-17. Patterson responds to this point by arguing that the words "in the absence of any contractual restriction to the contrary" are merely dictum. *See* Opp. at 8.

Patterson is incorrect. In *Schweitzer*, the Eleventh Circuit unequivocally confirmed that these words are integral to *Osorio's* holding. *See Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1274-5 (11th Cir. 2017). As the Eleventh Circuit noted in *Schweitzer*:

> In *Osorio*, we applied common-law consent principles and **held** that, **absent a contractual restriction to the contrary**, the TCPA allows a consumer to orally revoke her consent to receive automated calls.

*Id*. (emphasis added).

**II.    *Preston* Validates the Holding of *Osorio***

Any doubt about whether the Eleventh Circuit would hold that the right to revoke prior express consent can be contractually restricted was put to rest on October 12, 2017 by the Eleventh Circuit's decision in *Sec'y, United States DOL v. Preston*, No. 17-cv-01833, 2017 U.S. App. LEXIS 19926 (11th Cir., Oct. 12, 2017). In *Preston*, the Eleventh Circuit rejected the defendant's argument that ERISA's six-year statute of repose is not subject to contractual waiver. *Id*. at *1. The very first sentence of the *Preston* opinion reads: "It is hornbook law that rights of all kinds –

1

even constitutional ones – can be waived." *Id*. at *1. This rule also is simply a matter of "good ol' common sense." *Id*. at *19. The opinion concludes:

> "It would be passing strange – bizarre, in fact – to conclude that while a litigant can renounce his most basic freedoms under the United States Constitution, he is powerless to waive the protection of . . . ERISA's statute of repose. No way."

*Id*. *20 (ellipsis in original).

It would be even more bizarre to conclude that the right to revoke prior express consent under the TCPA cannot be contractually restricted. ERISA expressly creates a six-year statute of repose. *See* 29 U.S.C. § 1113. But the TCPA does not expressly permit revocation of prior express consent. *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017) ("While the act requires that any party wishing to make live or prerecorded calls obtain prior express consent, the statute is silent as to whether a party that has so consented can subsequently revoke that consent.") In 2015, the FCC found that "Congress' omission of a limited form of revocation means that Congress intended for broad common law concepts of consent and revocation of consent to apply." Dec. Ruling and Order, Jun. 18, 2015, 30 FCC 7961, 7994. Given that, as held in *Preston*, a party can contractually waive an *express* statutory protection, there is no doubt that a party can contractually restrict a right about which a statute is *silent*.

**III.    Patterson's Criticisms of *Reyes* Lack Merit**

In *Reyes*, the Second Circuit reached the same conclusion as the Eleventh Circuit: the right to revoke prior express consent can be contractually restricted. *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51 (2d Cir. 2017); Motion at 11 and 14-15. Patterson argues that *Reyes* is flawed for four reasons. Opp. at 6-14. Misleadingly, he fails to mention that all four arguments were raised in *Reyes* and were considered and rejected by the Second Circuit.

2

First, Patterson argues that *Reyes* is in "obvious conflict" with the Third Circuit's prior decision in *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 267 (3d Cir. 2013). *See* Opp. at 6. Patterson further contends that "the *Reyes* opinion fails to even acknowledge, let alone meaningfully address," that supposed conflict with the *Gager* opinion. *Id.*

In fact, *Reyes* discussed *Gager* and correctly found that it is distinguishable. *See Reyes*, 861 F.3d at 57 (citing *Gager*, 727 F.3d at 267). The contract between Reyes and Lincoln contained a specific provision on consent to autodialed calls. *Id.* at 53-54. The Second Circuit held that "the TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent." *Id.* at 55. In *Gager*, by contrast, Dell's position was that Gager consented to autodialed calls by implication when she voluntarily chose to furnish her phone number to Dell. *Reyes*, 861 F.3d at 57. Thus, there is no conflict between allowing Gager to revoke her consent and barring Reyes from revoking his.

Second, Patterson notes that, in *Gager*, the Third Circuit opined that "the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement." *See* Opp. at 10 (citing *Gager*, 727 F.3d at 723-4). However, the question of whether such a provision is "essential" has no bearing on whether it is revocable. As held in *Reyes*:

> Reyes also argues that his consent to be contacted is revocable because that consent was not an 'essential term' of his lease agreement with Lincoln. This argument is meritless. In contract law, 'essential terms' are those terms that are necessary in order to lend an agreement sufficient detail to be enforceable by a court. . . . But a contractual term does not need to be 'essential' in order to be enforced as part of a binding agreement. It is a fundamental rule of contracts that parties may bind themselves to any terms, so long as the basic conditions of contract formation (e.g., consideration and mutual assent) are met. . . .

*Reyes*, 861 F.3d at 58. Notably, the Second Circuit's discussion of this issue was grounded in New York law, which also governs the Ally-Patterson contract at issue here.

3

Third, Patterson contends that the FCC prohibits companies from making a transaction conditional on the provision of prior express consent to autodialed calls. *See* Opp. at 10. Patterson further notes that the Credit Application signed by Patterson states: "I understand that this consent is not a condition of purchase or credit." *Id*. Patterson then proceeds to argue: "[T]he *Reyes* opinion emphasizes the supposed 'bargained for exchange' inherent to contractual consent clauses when the FCC **expressly forbids** making such clauses a condition of doing business. This is quite obviously illogical." *Id*. at 11 (emphasis in original).

To the contrary, it is Patterson's argument that is illogical. As held in *Reyes*:

> A party who has agreed to a particular term in a valid contract cannot later renege on that term or unilaterally declare it to no longer apply simply because the contract could have been formed without it. Contracting parties are bound to perform on the terms that they did agree to, not what they might have agreed to under different circumstances.

*See Reyes*, 861 F.3d at 58. In other words, even if Patterson is correct that he did not *have to* expressly consent to autodialed calls in his contract with Ally, the fact is that he *did*. Having done so, he was not entitled to unilaterally change the terms of that contract.

Fourth, Patterson contends that *Reyes* improperly relied on common-law principles that, he claims, have been supplanted by "a broad **statutory** right of revocation under the TCPA." *See id*. at 11. *Reyes* thoroughly addressed this argument. *See Reyes*, 861 F.3d at 56-57. As noted earlier, the TCPA does not expressly define consent or contain an express right of revocation. *Id*. The FCC has found that the TPCA implicitly adopts the common-law understanding of those terms. *Id*. As a result, courts and the FCC turn to the common-law understanding of those terms in interpreting the TCPA. *Id*. at 57. That is what the Second Circuit did in *Reyes*. The Second Circuit concluded: "The common law is clear that consent to another's actions can 'become

4

irrevocable' when it is provided in a legally binding agreement, . . . in which case any 'attempted termination is not effective.'" *Id*.

### IV.   **Patterson's Contract Law Arguments Lack Merit**

Patterson argues that the consent provision at issue here is limited to telemarketing calls. *See* Opp. at 14-15. Patterson is incorrect. Patterson's argument violates the rule of interpretation that was relied upon by the Eleventh Circuit in *Osorio* – the rule of the last antecedent. *Osorio*, 746 F.3d at 1256. This rule "specifies that 'relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote.'" *Osorio*, 746 F.3d at 1256.

The consent provision at issue here reads: "I hereby consent to receive autodialed and/or pre-recorded telemarketing calls from or on behalf of dealer (or any financing source to which dealer assigns my contract) . . ." at the telephone number(s) provided in this credit application, including any cell phone numbers." Credit Application at 1. Based on the rule of the last antecedent, "telemarketing" only modifies "pre-recorded." "Telemarketing" does not modify "autodialed." That is, Patterson consented to receive (1) autodialed calls and (2) pre-recorded telemarketing calls. Patterson has expressly conceded that his claim exclusively concerns allegedly autodialed calls. *See* Opp. at 1 (referring to "**1,050** estimated autodialed calls made **after** the Plaintiff repeatedly requested the cessation of these calls") (emphasis in original) and 14-15 (referring to "the 1,050 or more estimated autodialed calls alleged by the Plaintiff to have been made by the Defendant after repeated revocations of consent . . ."). Thus, his prior express consent encompasses every one of the alleged calls at issue in this lawsuit.

This interpretation is further supported by the way the TCPA is written. The Act requires consent for any call to a cell phone made using an Automatic Telephone Dialing System

5

("ATDS"), whether the call is for commercial or non-commercial/informational purposes. 47 U.S.C. § 227(b)(1)(A). However, the FCC has exempted prerecorded informational calls to landlines from the TCPA's consent requirements. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.122(a)(3)(ii). Not surprisingly, the consent clause here tracks the FCC's duality between telemarketing and informational calling with respect to pre-recorded calls; it obtains the necessary blanket consent for autodialed calls and the more limited consent necessary for pre-recorded calls.

Patterson also contends that Ally is improperly attempting to "conflate two entirely separate agreements": the Credit Application and the RIC. *See* Opp. at 14. The Credit Agreement, as noted above, contains the consent provision at issue. The RIC notes that any contractual amendments must be in writing and signed by Ally. *See* RIC ¶ 8.

Patterson's argument is unavailing for two independent reasons. First, as noted in Ally's opening brief, it is well-established that two writings executed as part of a single transaction should be construed together. *See* Motion at 15-16. Ally has supplied the Court with evidence that the Credit Application and RIC were executed as part of the same transaction. *See* Accurso Dec. ¶¶ 4-8. Patterson has not provided any evidence to rebut this point.

Second, there is no genuine dispute about the fact that Ally never agreed in writing *or orally* to any changes to the Credit Agreement. *See* Accurso Dec. ¶ 8. Patterson has not provided any evidence to the contrary. Thus, even if the Court finds that the no-oral-modifications clause contained in the RIC does not extend to the Credit Application, the Court still should grant the Motion, as Ally never agreed in writing or orally to waive Patterson's contractual prior express consent.

## **CONCLUSION**

For the reasons set forth above and in Ally's opening suggestions, Ally respectfully requests that the Court grant the instant motion for partial summary judgment.

Respectfully submitted this 1st day of November, 2017.

                */s/ Artin Betpera*
                Artin Betpera
                Florida Bar No. 0049535
                DORSEY & WHITNEY LLP
                600 Anton Boulevard, Suite 2000
                Costa Mesa, California 92626
                Telephone: (714) 800-1421
                Facsimile: (714) 800-1499
                betpera.artin@dorsey.com

                Attorneys for Defendant
                ALLY FINANCIAL INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed a copy of the within and foregoing **DEFENDANT'S REPLY SUGGESTIONS IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which automatically sent e-mail notification of such filing to the following attorneys of record, each of whom is a registered participant in the Court's electronic notice and filing system:

Octavio Gomez, Esq.
Shaughn C. Hill, Esq.
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
TGomez@forthepeople.com
Shill@forthepeople.com

Attorneys for Plaintiff Eugene Patterson

This 1st day of November, 2017.

>   */s/ Artin Betpera*
>   Artin Betpera