# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

EUGENE PATTERSON,

    Plaintiff,

v.                                        Case No. 3:16-cv-1592-J-32JBT

ALLY FINANCIAL, INC.,

    Defendant.

## **O R D E R**

This case concerns the Telephone Consumer Protection Act's ("TCPA") regulation of communication between creditors and debtors, and it comes before the Court on cross-motions for partial summary judgment. Plaintiff Eugene Patterson filed a motion for partial summary judgment (Doc. 36), to which Defendant Ally Financial, Inc. responded (Doc. 39). Ally filed a motion for partial summary judgment (Doc. 19), to which Patterson responded. (Doc. 24). With the Court's permission (Doc. 26), Ally filed a reply (Doc. 29), and likewise, with the Court's permission (Doc. 31), Patterson filed a sur-reply (Doc. 35).

**I.    BACKGROUND**

On November 2, 2013, Eugene Patterson bought a Chevrolet Silverado pickup truck in Pulaski, New York. (Doc. 24-1; Doc. 24-2). To finance the purchase, he signed a credit application and a retail installment contract with Ally Financial for $28,684.20. (Id.). On the credit application, Patterson provided his telephone number and agreed to the following conditions:

> I hereby consent to receive autodialed and/or pre-recorded telemarketing calls from or on behalf of dealer (or any financing source to which dealer assigns my contract) at the telephone number(s) provided in this credit application, including any cell phone numbers. I understand this consent is not a condition of purchase or credit.

(Doc. 24-1 at 1). The retail installment contract, which Patterson signed alongside the credit application, stipulated that "[t]his contract contains the entire contract between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding." (Id. at 2).

Beginning in April 2014, after Patterson fell behind on his payments, representatives from Ally began contacting Patterson at the number he provided on the credit application. (Doc. 19 at 4). Between April 2014 and September 2016, Ally allegedly called Patterson 1,244 times using predictive dialing equipment. (Doc. 36 at 4; Doc. 36-1).

On December 29, 2016, Patterson filed a complaint alleging violations of the TCPA and the Florida Consumer Collection Practices Act ("FCCPA"). (Doc. 1; Doc. 16). The parties' cross-motions for partial summary judgment mostly ignore Patterson's FCCPA claim.[1] Instead, they primarily concern two issues: first, whether a debtor's

---

[1] Patterson's Amended Complaint (Doc. 16) has two counts: one each under the TCPA and FCCPA. In his motion for partial summary judgment (Doc. 36), however, Patterson includes only a few FCCPA-related paragraphs as an apparent afterthought. Id. at 22–24. This brief addendum offers no citations to relevant case law and instead baldly argues that Ally's hundreds of calls, standing alone, are dispositive of an FCCPA violation. Id.

In response, Ally correctly points out that call volume is neither necessary nor sufficient to constitute a triable issue of fact, much less a violation as a matter of law. (Doc. 39 at 19). Waite v. Fin. Recovery Servs., 8:09-cv-02336-T-33AEP, 2010 LEXIS 133438, at *12–14 (M.D. Fla. Dec. 16, 2010). See also Borneisen v. Capital One Fin.

provision of a telephone number to a creditor constitutes consent to contact under the TCPA; and second, assuming consent exists, to what extent and in what fashion it may be revoked.

## II. ANALYSIS

### A. Threshold Issues

Three initial matters must first be addressed before reaching the issue of consent. First, Ally contests whether its predictive-dialing system qualifies as an automatic telephone dialing system ("ATDS")[2] under the TCPA. (Doc. 39 at 16–17); see 47 U.S.C. § 227(b)(1)(A) (limiting the use of ATDS technology to emergencies and prior-consent situations only). This argument fails because the Federal Communications Commission ("FCC") has consistently held that predictive-dialing technologies are equivalent to ATDSs. In the Matter of Rules & Regulations Implementing the TCPA of 1991, 27 FCC Rcd. 15391, 15399, n.5 (2012); see also In the Matter of Rules & Regulations Implementing the TCPA of 1991, 23 FCC Rcd. 559, 566 (2008) (clarifying "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."). Despite Ally's arguments to the contrary, this Court is bound by the FCC's determination. See Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1114,

---

Corp., 8:09-CV-02539-T-17TGW, LEXIS 75712, at *34 (M.D. Fla. July 13, 2011) (determining that "proof of numerous calls alone does not create a jury issue."). To the extent that Patterson attempts to incorporate his FCCPA claim into the motion for summary judgment, therefore, that motion is denied.

[2] The qualifying trait of ATDS technology is "the capacity to dial numbers without human intervention." In re Rules, 23 FCC Rcd. at 566 (2008).

1121 (11th Cir. 2014) (holding that predictive dialers qualify as ATDS systems and that "[t]he 2008 FCC Ruling thus has the force of law . . . [and] district court[s] [are] without jurisdiction to consider the wisdom and efficacy of the 2008 FCC Ruling.").

Second, Ally questions whether Patterson possessed the cellular telephone in question during the relevant time period. (Doc. 39 at 14–16). Not only has Patterson provided an invoice from his wireless provider confirming that he is the owner and possessor of the telephone, but Ally's records also show that Patterson, at infrequent but regular intervals, answered his telephone. (Doc. 36-9; Doc. 36-1). Ally's possession argument is therefore unavailing.[3]

Third, Ally argues that the TCPA prohibits only "made," not "initiated," calls;[4] because Patterson did not always answer the telephone, most of the calls were not "made." (Doc. 39 at 12–13). This argument, though linguistically intriguing, does not

---

[3] In determining these matters, the Eleventh Circuit often focuses on who the subscriber is. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1252 (11th Cir. 2014) (explaining that "only the subscriber . . . can give such consent"). But see Gesten v. Stewart Law Group, LLC, 67 F. Supp. 3d 1356, 1359 (S.D. Fla. 2014) (expanding the realm of possible standing to non-subscribing called parties as well). In this case, Patterson was the subscriber to the telephone number in question. (Doc. 36-1; Doc. 36-9).

[4] This argument stems from the TCPA's use of different language to proscribe calls to residential telephone numbers ("initiate") versus cellular telephone numbers ("make"). 47 U.S.C. § 227(b)(1))(A–B). The FCC determined that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." In re Dish Network, LLC, 28 FCC Rcd. 6574, 6583 (2013). Yet the agency has offered scant guidance on the meaning of "make." See Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 790, (W.D. Pa. 2016) (explaining, "[a]s Defendant acknowledged during oral argument . . . no court has addressed the difference between 'initiate' and 'make'").

hold water because Ally fails to cite any legal authority that would distinguish "initiate" from "make" under the TCPA. Having laid aside these three preliminary matters, the Court turns now to the more substantive issues of consent and revocation.

**B.    Whether the TCPA Permits Non-Contractual Prior Consent and Revocation**

The parties' primary concern is the scope of the TCPA's "prior express consent" exception: whether a debtor's provision of a telephone number to a financial institution constitutes prior consent to contact—and, if so, how consent may be rescinded. Patterson contends that he never gave his permission to be contacted and, in the alternative, that he orally revoked any consent he may have given. (Doc. 36 at 9–16). Ally rejoins these contentions and states that Patterson provided consent to be called and that he cannot orally revoke his consent. (Doc. 19 at 7–17).

The TCPA does not allow "any person . . . to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). The statute creates a private cause of action that permits individuals to seek injunctions or damages equal to actual monetary loss or $500 for each infraction. Id. § 227(b)(3)(B). Treble damages may be awarded if a defendant acts willfully or knowingly. Id. § 227(b)(3)(C).

One year after Congress passed the TCPA, the FCC clarified that "persons who knowingly release their phone numbers have in effect given their invitation or

5

permission to be called at the number which they have given, absent instructions to the contrary." In re Rules & Regulations Implementing the TCPA of 1991, 7 FCC Rcd. 8752, 8769 (1992). More recently, the FCC determined that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." In re Rules, 23 FCC Rcd. at 564. Interpreting this administrative guidance, the Eleventh Circuit determined that "if a person knowingly releases his phone number, calls[5] are permitted because the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications." Mais, 768 F.3d at 1118. Although Patterson denies that gave Ally prior consent to make debt-collection phone calls (Doc. 36 at 9–13), his argument fails because he provided his telephone number on his credit application. (Doc. 36-2 at 5).

Once prior consent is granted, the TCPA itself says nothing about how consent may be rescinded. See Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51, 56 (2nd Cir. 2017) ("[T]he act requires that any party wishing to make live or prerecorded calls

---

[5] This applies to all types of calls, including those for debt collection. See In re Rules & Regulations Implementing the TCPA of 1991, 30 FCC Rcd. 7961, 8028, (2015) (explaining that "a party who provides his wireless number to a creditor as part of a credit application reasonably evidences prior express consent by the cell phone subscriber to be contacted at the number regarding the debt."). It also applies to the number of calls as well. No numerical threshold exists that, once passed, exceeds prior consent. See Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 269 (3d Cir. 2013) (articulating that the limited nature of prior consent derives from the called parties' right to opt out at any time).

obtain prior express consent, the statute is silent as to whether a party that has so consented can subsequently revoke that consent.").

Although the statute lacks clarity on this point, the FCC's guidance on the matter of revocation is unambiguous: "A called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur." In re Rules & Regulations Implementing the TCPA of 1991, 30 FCC Rcd. 7961, 7989–90 (2015). See also In re Rules & Regulations Implementing the TCPA of 1991, 7 FCC Rcd. 8752, 8766 n.47 (1992) (describing how subscribers may revoke consent to future contact).

Despite the FCC's apparent clarity, circuit courts have applied the Commission's guidance unevenly. The Second Circuit recently held, for example, that "the TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent." Reyes, 861 F.3d at 56. The Reyes court distinguished a gratuitously given telephone number from a number provided as part of an express contractual agreement; within the latter, the Second Circuit held, consent may not be revoked. Id. at 57.

In contrast, the Third Circuit makes no such distinction. Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270–71 (3d Cir. 2013). The Gager court found that the "TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems." Id. at 272. The Third Circuit based its conclusion not only on the FCC's guidance, but also on common-law notions of consent and legislative intent. See id. at 270–71 (elucidating that "[o]ur decision is

7

also in line with the purpose of the TCPA. The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls"; "[u]nder the common law understanding of consent, the basic premise of consent is that it is 'given voluntarily.'" (quoting BLACK'S LAW DICTIONARY, 346 (9th ed. 2009)).

Faced with these two options, the Eleventh Circuit has favored the Third Circuit's line of reasoning over the Second Circuit's. See Reyes, 861 F.3d at 56 (stating that "[t]wo of our sister circuit courts [the Third and Eleventh] have ruled that a party can revoke prior consent under the terms of the act".). See also Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1252 (11th Cir. 2014) (referring to Gager's "more compelling approach."). In Osorio, the Eleventh Circuit adopted the Gager court's rationale because "allowing consent to be revoked orally is consistent with the government interest articulated in the legislative history of the Act [that] enabl[es] the recipient to contact the caller to stop future calls," and "[c]ommon-law notions of consent generally allow oral revocation." Osorio, 746 F.3d at 1255. (internal citation omitted). Osorio further relied on Gager for the proposition that "in light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers." Id. at 1252 (citing Gager, 727 F.3d at 270).

Three years after Osorio, the Eleventh Circuit reiterated the possibility of oral revocation and added that revoking prior consent is not a binary matter. Schweitzer v. Comenity Bank, 866 F.3d 1273, 1280 (11th Cir. 2017). The court in Schweitzer held, under a theory of "limited consent," that prior consent under the TCPA may be partially revoked. See id. at 1274 (explaining that "[i]n law, as in life, consent need not

be an all-or-nothing proposition. Having already concluded that the [TCPA] allows for the oral revocation of consent, we now hold that the Act permits a consumer to partially revoke her consent to be called by means of an automatic telephone dialing system." (internal citations omitted)). Relying on the FCC's statement that "consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke," the Eleventh Circuit discussed whether a debtor could orally revoke consent for telephone calls made during certain times of the day. Id. at 1278 (quoting In re Rules, 30 FCC Rcd. at 7996). The court held that such revocation was possible, but that whether it occurred was a factual matter reserved for a jury. Schweitzer, 866 F.3d at 1280. Considering the wealth of precedent from this Circuit illustrating the option of consent-withdrawal, Ally's assertion that the TCPA does not permit oral revocation is meritless.

### C. Whether the TCPA Subsumes Contractual Consent

In Osorio and Schweitzer, the Eleventh Circuit noted that a debtor may orally revoke consent "in the absence of any contractual restriction to the contrary." Osorio, 746 F.3d at 1255; Schweitzer, 866 F.3d at 1275. Seizing upon that phrase, Ally argues that the contractual provision permitting "autodialed and/or pre-recorded telemarketing calls," coupled with the "no oral changes" clause of the accompanying contract, prevents Patterson from revoking consent. (Doc. 19 at 15).

The parties disagree over whether the credit application and the retail installment contract, both signed as a condition of financing, are two separate

9

agreements or a single contract. (Doc. 19 at 15–16; Doc. 36 at 11–13). Ally contends that if they are a single contract, then Patterson may not restrict Ally from calling him, absent a jointly signed agreement. (Doc. 19 at 16).

This argument is not persuasive. Even assuming *arguendo* that the two contracts are viewed in conjunction, a plain reading of the provisions belies Ally's assertion. Patterson only explicitly consented to *telemarketing* calls, not debt-collection calls. (Doc. 36-4 at 1). Thus, looking within the four corners of the contract, Patterson's putative attempts to orally revoke consent to debt-related communication fall outside the bounds of the contract's "no oral changes" clause. Because TCPA-engendered consent—in the form of Patterson providing his telephone number—is beyond the scope of the contract itself, and because Patterson never attempted to orally change any contractual provision, the issue of whether the two contracts are functionally the same need not be addressed here.

Furthermore, courts in this Circuit construe the words "in the absence of any contractual restriction to the contrary" narrowly. The phrase was first recorded (and has never been expounded upon) in Osorio in 2014, one year before the FCC unequivocally stated that a caller may not limit the ways a called party may revoke his consent. See 30 FCC Rcd. at 7990 (taking place in 2015). Referring in part to the FCC's statement that "[a] caller may not limit the manner in which revocation may occur" a court in this District noted that the agency's 2015 "Order has the force of law and abrogates prior FCC Orders and case law on point." Rodriguez v. DFS Servs., LLC,

8:15-cv-2601-T-30TBM, 2016 U.S. Dist. LEXIS 11494, at *6 (M.D. Fla. Feb. 16, 2016) (referencing 30 FCC Rcd. at 7990).

Since 2015, decisions from within the Circuit have favored a Gager-like, common-law approach to consent that permits oral revocation even in the presence of a contract. See, e.g., Target Nat'l Bank v. Welch, 8:15-cv-614-T-36, 2016 LEXIS 38635, at *14 (M.D. Fla. March 24, 2016) (stating that "[t]he fact that [the plaintiff] entered into a contractual relationship with [the defendant] did not exempt [the defendant] from the TCPA's requirements."). In a scenario factually similar to the instant case, a vehicle-financing plaintiff signed a provision that permitted the defendant to call "in the event of default or other need to make contact with [her] during the term of the account being open." Smith v. MarkOne Fin. LLC, 3:13-cv-933-J-32MCR, 2015 LEXIS 11803 at *2 (M.D. Fla. Feb. 2, 2015). The issue in Smith was not whether consent was contractually granted (it was), but whether, despite contractual consent, oral revocation occurred. See id. at *9 (explaining that the defendant "asserts that it is entitled to summary judgment on the TCPA claim because [the plaintiff] expressly consented to being called. Prior express consent is an affirmative defense to a TCPA claim. That consent can, however, be revoked, either orally or in writing.") (internal citations omitted). This Court, therefore, finds nothing in either the TCPA or the text of the contract(s) that precludes Patterson from orally revoking his consent to be contacted.

11

### D. Whether Patterson Revoked Consent

Patterson points to three telephone conversations—on May 31, 2015; October 2, 2015; and May 17, 2016—during which he states that he orally rescinded consent. (Doc. 36 at 14–17). In response, Ally points to its own records and contends that no such revocation took place. (Doc. 39 at 7–14).

Whether Patterson's three conversations with Ally constitute revocation of consent, however, is matter of fact, not of law. See Smith, LEXIS 11803 at *9 (stating that in prior-consent disputes under the TCPA, "[d]isagreement over whether consent was orally revoked precludes summary judgment."). Patterson says that he thrice told Ally to stop calling him. Ally contests this assertion. This is precisely the type of factual dispute beyond the purview of summary judgment.[6] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (stating that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Because Patterson provided prior consent for communication, and because whether he revoked that prior consent is a fact-sensitive inquiry, summary judgment is inappropriate for either side.

Accordingly, it is hereby

**ORDERED:**

---

[6] In Schweitzer, the Eleventh Circuit held that partial revocation may be made via the telephone, but that determining whether revocation occurred is fact-intensive. Schweitzer, 866 F.3d at 1278.

12

1. Plaintiff Eugene Patterson's Motion for Partial Summary Judgment (Doc. 36) is **DENIED.**

2. Defendant Ally Financial, Inc.'s Motion for Partial Summary Judgment (Doc. 19) is **DENIED.**

3. The case will continue to be governed by the Case Management and Scheduling Order (Doc. 8).

**DONE AND ORDERED** in Jacksonville, Florida the 31st day of January, 2018.

*TIMOTHY J. CORRIGAN*
United States District Judge

mm
Copies:

Counsel of record